**CV 10 3569**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------

EPOCH DATA, INC.,

    Plaintiff,

-against-

PAUL SILVERSTEIN; PCS CONSULTING, LLC.;
PATRICE MOTZ; RUBEN SANCHEZ; JUD GITTELMAN;
DELPHI STAFFING, LLC; TPS 360 DEGREES;
LONDON POTOMAC, LLC.; and ITRENDZ, LLC.

    Defendants.
-----------------------------------------------------------

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ AUG 03 2010 ★

LONG ISLAND OFFICE

WEXLER, J.
LINDSAY, M.

Plaintiff, by its attorney, David Schlachter, Esq., respectfully alleges as and for its

Complaint, as follows:

## PRELIMINARY STATEMENT

This civil action is brought by Epoch Data, Inc. (hereinafter referred to as EDI) against Paul Silverstein; PCS Consulting, LLC.; Patrice Motz; Ruben Sanchez: Jud Gittelman; Delphi Staffing, LLC; TPS 360 Degrees; London Potomac, LLC; and Itrendz, LLC. for a scheme to defraud and to steal in connection with the operation of the plaintiff's business. The relief sought includes treble damages, compensatory, treble, and punitive damages under state law; the imposition of a constructive trust with tracing; costs of investigation and suit; interest, and attorney fees.

## JURISDICTION

2. This Court has jurisdiction of this action under the Organized Crime Control Act of 1970, 18 U.S.C. § 1964 (a) and (c) (RICO); 28 U.S.C. §§ 1331, 1332; 1337, and under the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

3. Personal jurisdiction and venue in this action are predicated on 18 U.S.C. § 1965 and on 28 U.S.C. § 1391(b), since certain defendants are residents of, are found within, have agents within, or transact their affairs in this District, and certain activities of the defendants giving rise to this action took place in this District.

## PARTIES AND RELATIONSHIPS

4. Plaintiff EDI is a New York corporation with its offices and principal place of business located in the State of New York, County of Suffolk, at 6 Zoranne Drive, East Northport, NY 11731.

5. Plaintiff EDI is and since 1987 has been engaged in the business of providing technology solutions, systems and enterprise integration, project management and staffing, technical support, product sales, and software development and solutions.

6. At all times relevant hereto the defendant Paul Silverstein (hereinafter "Silverstein") was and is a resident of the State of New York, County of Westchester, residing at 32 Edgewood Avenue Larchmont, New York 10538.

7. The defendant Silverstein was employed by the plaintiff from 2003 until August 1, 2007.

8. At all times relevant hereto, the defendant Silverstein was Executive Vice President of EDI.

9. Upon information and belief, the defendant PCS Consulting, LLC (hereafter PCS) is a corporation with its principal place of business located at and a place of business at 1521 King Street, Suite 203, Alexandria Va. Upon information and belief, the defendant PCS was established in 2006 with corporate offices in Santa Monica, California and offices in Colorado, Las Vegas, Washington DC, and New York.

10. The defendant Patrice Motz (hereafter "Motz") is a resident of the State of Virginia. From February 1, 2007 to approximately August 1, 2007, the defendant Motz was Executive Vice President of the defendant PCS. Thereafter, the defendant Motz was the Principal of the defendant PCS.

11. The defendant Ruben Sanchez (hereafter "Sanchez") is a resident of the State of Nevada. Upon information and belief, the defendant Sanchez was President of the defendant PCS from its inception until approximately July 15, 2007.

12. Upon information and belief, at all time relevant hereto, the defendant Jud Gittelman (hereinafter "Gittelman") was and is a resident of the State of New York, County of Westchester, residing at 7 Rochelle Road, Larchmont, NY 10538.

13. Upon information and belief, at all times relevant hereto, the defendant Delphi Staffing, LLC. (hereafter "Delta Staffing") was and is a corporation with its principal place of business at Suite 2408, 60 E. 42nd Street, New York, NY.

14. Upon information and belief, at all times relevant hereto, the defendant TPS 360 Degrees was a corporation with offices and a principal place of business located at Suite 2408, 60 E. 42nd Street, New York, NY.

15. Upon information and belief, at all times relevant hereto, the defendant London Potomac, LLC was a corporation with offices and a principal place of business located at Suite 2408, 60 E. 42nd Street, New York, NY.

16. Upon information and belief, at all times relevant hereto, the defendant Itrendz, LLC. was a corporation with offices and a principal place of business located at Suite 2408, 60 E. 42nd Street, New York, NY.

## SCHEME TO DEFRAUD AND TO STEAL

17. Without the knowledge or consent of plaintiff, defendants Silverstein, PCS, Motz and Gittelman agreed, combined, and conspired among themselves and with others unknown. the defendant to plaintiff to devise, intend to devise, and participate in—and did devise, intend to devise and participate in—a scheme and artifice to defraud and to steal, and for obtaining property by means of false and fraudulent pretenses, representations, and theft, and to conceal the thefts by false and fraudulent pretenses, representations, and false declarations, all as more fully described in paragraphs 18 through 36.

18. It was a part of the scheme to defraud and to steal that defendant Silverstein through his position in EDI, and the position of ostensible trust and responsibility he occupied with respect to the affairs of that business, came into possession of confidential information which was the property of EDI , including but not limited to business relationships and business opportunities, customer lists, contact information, suspect and prospect lists, EDI standard contract, marketing information, strategic business plans, product design, product architecture and development.

19. At all times relevant hereto the defendant Silverstein was subject to an agreement which, *inter alia*, required him to keep confidential all information received from EDI and which made all of his "ideas, concepts...which are conceived, made or reduced to practice by me individually or jointly with any other person or persons" the property of EDI. A copy of the agreement is annexed, hereto, made a part hereof and marked Exhibit A.

20. It was a part of the scheme to defraud and to steal that defendant Silverstein through his position in EDI, in or about 2005, introduced the defendants Gittelman, Motz and Sanchez to each other.

21. It was a part of the scheme to defraud and to steal that, in or about 2006 the defendants Gittelman, Motz, Sanchez and Silverstein established the defendant PCS.

22. At all times relevant hereto, the defendants Gittelman, PCS, Motz and Sanchez knew that the defendant Silverstein was employed by EDI.

23. At all times relevant hereto the defendant PCS was in competition with the plaintiff.

24. Commencing in or about December 2006 the defendant PCS paid the defendant Silverstein $6000.00 per month.

25. It was a further part of the scheme to defraud and to steal that the defendants Silverstein, PCS, Motz and Sanchez conspired to conceal from EDI and did in fact conceal the payments.

26. It was further a part of the scheme to defraud and to steal that defendant Silverstein transmitted and/or communicated confidential information gathered from EDI to the defendants PCS, Motz, Sanchez and Gittelman, including but not limited to business relationships and business opportunities, customer lists, contact information, suspect and prospect lists, EDI standard contract, marketing information, strategic business plans, product design, product architecture and development.

27. It was further a part of the scheme to defraud and to steal that defendant PCS employed and compensated the defendant Silverstein from in or about December 2006, while he was employed by EDI.

28. It was further a part of the scheme to defraud and to steal that the defendant Silverstein performed work, labor and services on behalf of the defendants PCS, Motz, Sanchez and Gittelman while he was being paid to devote his full time and attention to the business of EDI.

29. It was further a part of the scheme to defraud and to steal that the defendant Silverstein performed work, labor and services on behalf of the defendants PCS, Motz, Sanchez and Gittelman using the equipment and resources of the plaintiff EDI.

30. It was a further part of the scheme to defraud and to steal that the defendants Silverstein, Motz, Sanchez and PCS would and did make false statements regarding their activities in order to conceal the scheme and the activities of the participants therein.

31. It was further a part of the scheme to defraud and to steal that defendant Gittelman provided the defendant Silverstein with a telephone and laptop to be used and which were used to conceal Silverstein's unlawful activities.

32. It was further a part of the scheme to defraud and to steal that defendant Gittelman provided funds to the defendants Silverstein and PCS to further the scheme.

33. It was a further part of the scheme to defraud and to steal that defendants Silverstein, PCS, Sanchez and Motz conspired to have EDI retain the services of PCS and Motz.

34. It was further a part of the scheme to defraud and to steal that defendants Silverstein, Motz, Sanchez, PCS and Gittelman made numerous interstate telephone calls and sent numerous e-mail messages for the purpose of furthering the scheme.

35. The defendants Silverstein, Motz, Sanchez, PCS and Gittelman knew that the use of interstate mail and wire services was a reasonably foreseeable consequence of the scheme.

36. It was further a part of the scheme to defraud and to steal that defendant Silverstein transferred to PCS and Motz the prospect list acquired at a Las Vegas show at the plaintiff's cost and expense.

37. Without the knowledge or consent of plaintiff, defendants Silverstein, Delphi Staffing, and Gittelman agreed, combined, and conspired among themselves and with others unknown to plaintiff to devise, intend to devise, and participate in—and did devise, intend to devise and participate in—a scheme and artifice to defraud and to steal, and for obtaining property by means of false and fraudulent pretenses, representations, and theft, and to conceal the thefts by false and fraudulent pretenses, representations, and false declarations, all as more fully described in paragraphs 19 and 38 through 51.

38. It was a part of the scheme to defraud and to steal that in or about 2003-2004 defendant Silverman introduced Sally Brandon to the defendant Gittelman for the purposes of organizing and creating a business entity, Delphi Staffing.

39. The defendants Gittelman and Silverstein and Brandon created Delphi Staffing, which competed and competes directly with EDI.

40. At all times relevant hereto, the defendants Gittelman and Delphi Staffing knew that the defendant Silverstein was employed by EDI.

41. Prior to 2004-2005, David Denmark and Robert Frangelica were key associates of Rohn Rodgers, a consulting and staffing company with which EDI had worked and with whom it competes.

42. It was a further part of the scheme to defraud and to steal that in or about 2005 defendant Silverstein introduced David Denmark to the defendants Gittelman and Delphi Staffing.

43. It was a further part of the scheme to defraud and to steal that in or about 2005 defendant Silverstein introduced Robert Frangelica to the defendants Gittelman and Delphi Staffing.

44. It was a further part of the scheme to defraud and to steal that in or about 2006 the defendant Delphi Staffing established a business relationship with David Denmark and Robert Frangelica.

45. It was further a part of the scheme to defraud and to steal that the defendant Silverstein performed work, labor and services on behalf of the defendants Delphi Staffing and Gittelman while he was being paid to devote his full time and attention to the business of EDI.

46. It was further a part of the scheme to defraud and to steal that the defendant Silverstein performed work, labor and services on behalf of the defendants Delphi Staffing and Gittelman using the equipment and resources of the plaintiff EDI.

47. It was a further part of the scheme to defraud and to steal that the defendant Silverstein would and did make false statements regarding their activities in order to conceal the scheme and the activities of the participants therein.

48. It was further a part of the scheme to defraud and to steal that defendant Gittelman provided the defendant Silverstein with a telephone and laptop to be used and which were used to conceal Silverstein's unlawful activities.

49. It was further a part of the scheme to defraud and to steal that defendant Gittelman provided funds to the defendants Silverstein and Delphi Staffing to further the scheme.

50. It was further a part of the scheme to defraud and to steal that defendants Silverstein, Gittelman and Delphi Staffing made numerous interstate telephone calls and sent numerous e-mail messages for the purpose of furthering the scheme.

51. The defendants Silverstein, Motz, Sanchez, PCS and Gittelman knew that the use of interstate mail and wire services was a reasonably foreseeable consequence of the scheme.

52. The above-described conduct took place from 2003 until the present.

53. The above-described conduct was willful.

54. The defendants Silverstein, PCS Consulting, LLC., Patrice Motz; Jud Gittelman; and Delphi Staffing, LLC; thereafter transferred some or all of their assets to the defendants TPS 360, London Potomac and Itrendz.

55. Upon information and belief, the defendants Silverstein, PCS Consulting, LLC., Patrice Motz; Jud Gittelman; and Delphi Staffing, LLC; owned and operated the defendants TPS 360, London Potomac and Itrendz.

56. As a result of the above-described conduct, the plaintiff was deprived of his property, resulting in the loss of business and business opportunities and was deprived of its rights to a portion of the assets of the defendants PCS and Delta Staffing.

57. Plaintiff demands trial by jury.

## FIRST CAUSE OF ACTION (RICO)

58. This is a civil action brought by the plaintiffs under RICO.

59. The plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

60. Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and (d).

61. PCS and Delta Staffing are each an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

62. Each defendant was an owner of, was employed by, or was associated with an enterprise, that is, engaged in and the activities of which affected interstate commerce, within the meaning of 18 U.S.C. § 1962(c).

63. Each defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs, and conspired so to do, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), that is:

a. Wire fraud in violation of 18 U.S.C. § 1341

b. Mail fraud

c. Transportation in interstate commerce of goods stolen or taken by fraud in violation of 18 U.S.C. § 2314

d. Conspiracy in violation of 18 U.S.C. § 1962 (d)

e. Bribery in violation of 18 U.S.C. § 1961

64. The plaintiffs were injured by the defendants in their business and property in an undetermined amount by reason of violations of 18 U.S.C. §§ 1962(c) and (d) committed by the defendants within the meaning of 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION (Fraud)

65. The above-described conduct constitutes fraud.

## THIRD CAUSE OF ACTION (conversion)

66. The above-described conduct constitutes conversion.

## FOURTH CAUSE OF ACTION (Unjust enrichment)

67. The above-described conduct constitutes unjust enrichment.

## FIFTH CAUSE OF ACTION (tortious interference with prospective business relationships)

68. above-described conduct constitutes tortious interference with business relationships.

## SIXTH CAUSE OF ACTION (unfair competition)

69. The above-described conduct constitutes unfair competition.

## SEVENTH CAUSE OF ACTION (misappropriation of trade secrets)

70. The above-described conduct constitutes misappropriation of trade secrets.

## EIGHTH CAUSE OF ACTION (breach of contract)

71. The above-described conduct constitutes breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands:

A. That judgment be entered against the defendants and each of them and in favor of the plaintiff:

1. In the amount of $3,000,000, trebled in accordance with 18 U.S.C. § 1964(c), representing the value of the stolen property;

2. In the amount of $18,000,000 representing actual, treble and punitive damages in accordance with state law;

3. For the costs of investigation and processing of claims for loss in an undetermined amount, trebled in accordance with 18 U.S.C. § 1964(c);

4. For the costs of suit in accordance with 18 U.S.C. § 1964(c); and

5. For reasonable attorney fees in accordance with 18 U.S.C. § 1964(c) and state law;

B. Such other relief, including the imposition of a constructive trust with tracing, and interest, as this Court may deem just and proper.

Dated:   August 2, 2010
         Uniondale, N.Y. 11556

                                        LAW OFFICES OF DAVID SCHLACHTER
                                        626 RXR Plaza
                                        Uniondale, N.Y. 11556
                                        (631) 543-0300
                                        By_____
                                        David Schlachter (DS2859)

EMPLOYMENT AGREEMENT
**Applicable to All Employees**

I, _____Paul Silverstein_____, in consideration of my employment by
      (PRINT NAME)

EPOCH DATA, INC. of New York City, a New York State corporation, or any of its subsidiaries (EPOCH), agree as follows:

### 1. Ideas, Inventions, Software

During and subsequent to the period of my employment by EPOCH, I agree to disclose EPOCH promptly and fully, to assign to EPOCH my entire right, title and interest in and to all ideas, concepts, inventions, improvements and discoveries, including those relating to software, whether or not patented or patentable, and any and all writings including those relating to software regardless of the media and whether or not copyrighted or copyrightable (PROPERTIES), which are conceived, made or reduced to practice by me individually or jointly with any other person or persons during the period of my employment by EPOCH, provided that such properties arise from or relate to work that I have done for epoch, or relate to the business or any engineering or research projects of EPOCH or involve use of EPOCH's equipment, facilities or time.

### 2. Assistance to Epoch

During and subsequent to my period of employment by EPOCH, I agree to execute all documents deemed necessary by EPOCH and to assist EPOCH in securing fully to EPOCH or its designee in all countries the entire right, title and interest in and to any such PROPERTIES whether by way of patents, patent application, trademark and copyright registrations, or any assignment thereof, or other rights, therein.

### 3. Conflict with the Above

(a)I have no agreement (s) with or obligations (s) to others which do or which may conflict with or limit in any way the scope of my obligations under the foregoing paragraphs 1 and 2, and (b) I do not own or have any interest in any patent, patent application, unpatented invention or writing (including any of the foregoing involving software) except as previously disclosed to EPOCH and acknowledged in writing by EPOCH.

### 4. Ownership of Materials

I acknowledge that all materials (including, without limitation, all tools, books, papers, documents, drawings, writings, records, models, customer lists, notebooks, software, and software documentation.) which are furnished to me, or which I prepare or otherwise acquire in the scope of or in connection with my employment with EPOCH, are the exclusive property of EPOCH or of any parties to whom EPOCH has an obligation to protect such material. I will promptly surrender to EPOCH upon termination of my employment all such materials and all copies of such materials.

A

3. Confidentiality and Use

Without the written approval of EPOCH, I will not, during the period of my employment by EPOCH, or any time thereafter, disclose to others or use, for my own benefit or otherwise, any information, knowledge or data I receive or develop during my period of employment by Epoch which is confidential, including information contained in formulas, business processes, business plans, customer lists, methods, machines, manufactures, compositions, engineering, research, ideas, concepts, inventions, discoveries, writings, software or otherwise, or which EPOCH has received in confidence from others, nor will I disclose to EPOCH and confidential information of others.

## 5. Employment Agreement

I acknowledge that employment at epoch is for an indefinite period of time and terminable at any time, with or without cause being shown, by either me or EPOCH. Also, I acknowledge that this Agreement together with (a) any written offer of employment, (b) the Statement of Corporate Policy and Code of Conduct, and any subsequent amendments, and (c) the Sales Compensation Plan, if applicable, contain my entire understanding in connection with my employment at EPOCH and supersede and replace all prior negotiations, agreements or representations whether oral or written.

## 6. State Law

This agreement shall be construed and governed by the laws of the State of New York.

**Applicable to Sales/ Marketing Employees**

## 7. Territory

I recognize that the territory assigned to me has some established accounts which have previously been solicited by EPOCH and I agree to refrain for a period of one year after leaving the employ of EPOCH from contracting or soliciting accounts on behalf of any company doing business in competition with EPOCH that I have previously contacted or solicited while in the employ of EPOCH.

## 8. Offer and Plan

I acknowledge tat I have received, read and understood the Offer of Employment and the Sales Compensation Plan incorporated herein, and accept the conditions of the Sales Compensation Plan and subsequent amendments.

Signed: *[signature]*

Dated: 1/14/02